Good morning, everyone. Welcome. Our first case for argument this morning is United States v. Kelly. Thank you and good morning, Your Honors. May it please the Court, my name is Jennifer Bonjean and I represent Robert Kelly. I am going to work backwards this morning and start by addressing the sentencing issue, but happy to field questions about any of the issues before the Court. Mr. Kelly was indicted in a 13-count indictment. He was convicted of six counts. He was acquitted of seven of those counts, including obstruction of justice based on a 2008 state court prosecution, conspiracy to receive child pornography, and then the receipt counts. Mr. Kelly was sentenced to a 240-month sentence, which was the statutory maximum, and a sentence significantly above the guideline range. And the district court judge properly calculated the guidelines, but then gave just essentially a polite nod to them and decided, you know, I think 20 years is the right sentence. And the district court's justification for the above guidelines range lacked sufficient factual basis, and that is our position. Generally speaking, he relied on acquitted conduct and he relied on the guidelines today would punish this more severely. Therefore, we should give him an above guidelines range. Now I want to first start with the acquitted conduct. If you look at the district court's comments, he both imprecisely and inaccurately stated that the evidence presented at Kelly's trial essentially showed that he engaged in some type of obstructive behavior. Ms. Bongean, do we know, though, that the district court actually relied on that? Because the district court said, I could find by a preponderance that he obstructed justice. There was no specific finding that he did. Yes, and that's an excellent point, Your Honor. Our position is the judge was imprecise. He vaguely referenced, I could do this, it could be based on this. Would you want us to infer from that that he actually did? And what's the basis to do that given the judge's specific comments? Well, I think what I would like the court to do is first find that his comments were too vague and ambiguous for us to find what he relied on. And I think in our briefs we said it was both procedurally improper and then we argued that even if you accept the government's position that there was this basis, the judge did make this finding. And the comments were sort of a little bit of a stream of consciousness, if you will. And he said, I could do it. So our position as our briefs, I think, set forth is that it wasn't precise enough. He didn't identify the factual basis. But even if we looked at those factors, they would not provide a basis for an above guidelines range. The district court sentencing seemed very grounded in the 3553 factors and his concern for the seriousness of this offense and your client's history and characteristics, which is exactly what courts must do is look at the 3553 factors. How do you get around that? Well, I think you still have to look at the guidelines range as a starting point. And I would remind the court that probation found that there was no basis to sentence him above the guidelines. But that's not determinative. The court has to look at 3553, which again, the court spent quite a bit of time on those factors, in particular the seriousness of the offense, the need for deterrence here, protecting the public. And those were all appropriate factors to look at. But when a court decides to go 72 months above a guidelines range, it still should identify factually specific aggravating factors that would justify it, not simply say there was this acquitted conduct that I could find. And again, our position is the government did not prove the acquitted conduct by preponderance of the evidence. We know that because the jury acquitted him of the conspiracy to receive child pornography. So this wild goose chase that the judge referenced as sort of a basis for this above guidelines range is not borne out at all. In fact, the jury affirmatively rejected the government's narrative. Different burden of proof. I understand. I understand. But it's not logical. We sometimes see cases where maybe the government just didn't meet its burden. Right. We don't we can't assume that the jury would have not found it by the lower standard. But in this case, we can tell very clearly that they did not find that those tapes that were the subject of the wild goose chase were child pornography. If they had, they would have at least convicted Mr. Kelly of the conspiracy count. It's the same child pornography. They looked at the images on count related to counts two and three. They found it to be child pornography. And then they acquitted him of the conspiracy. Ms. Bongean, if we agree with you and send this back for resentencing, does your client realize he could end up worse off? Because the court did go above the guidelines. But very significantly, only one year is consecutive to the sentence that your client received in New York. So theoretically, if it's remanded for resentencing because of an error and the court gives a guideline sentence, which is what you're you seem to be arguing the court should have given that entire guideline sentence could be consecutive or half of it or more than a year, which would put your client in a worse position. So does your client realize that? Yes, Judge. I do think that if the net result was a more significant sentence, it would be retaliatory for exercising his right to appeal. So I don't think the judge could or and I frankly don't think the judge would do that. The judge certainly could. If it's sent back for resentencing, the judge could start over and look at everything. So to say it would be retaliatory, there's no grounds for that or no case law that would support giving a higher sentence or a sentence that would have a more significant consequence. Well, I think the second point is a more is a more I think a valid point to some degree. But I do think there's plenty of case law that says you can't punish someone for exercising their right to an appeal. Right. So if the judge were to give a net greater sentence, our position would be that that was retributive. I just want to make sure your client understands that if he wins on this particular point, he has risks if that he might get a higher consecutive sentence. Yes, Judge. And frankly, to be frank, kind of all depends on what happens in the Eastern District because that's right. That's on appeal. That's that's his life sentence right there. Essentially, it's a 30 year sentence. So not to say this doesn't matter, but if that sentence sticks, he probably will die in prison. And that is the reality. So we have had these conversations of the court, you know, is asking that. And we understand that we had those conversations before we even went to trial, frankly. And we he understands all of that. I would argue. And just moving on to, again, the general proposition that an ex post that the general proposition that modern guidelines can just provide a basis for giving an above guideline sentence does run afoul of the ex post factor clause, where the district court is not pointing to some specific aggravating factor, for example. Would we have to overrule CO to find for you where we said it's OK to look to guideline amendments to justify a variance? No, not at all. In fact, I think the court should rely on CO. It's OK to look at amendments. That's perfectly OK. You can look at an amendment. But that's not what happens here. So, for instance, if the applicable guidelines didn't take into account, this is not the case, but for instance, the age of the victim and modern guidelines do take account the age of the victim, then it would be appropriate under CO to say, I'm going to rely on the age of the victim as a basis for going above the guidelines. But here what we have is sort of this general idea that modern guidelines are more harsh. We care more about child pornography now, and modern guidelines are more serious or punish the conduct more severely. This is just an end run around the ex post facto prohibition. So the court could have gotten there, but there needed to be some precise basis. And neither the court, the government, or probation, really anyone has identified a specific aggravating factor that was not addressed in the applicable guidelines. And that is the reason that this is just a pew violation rather than a proper basis for going above the guidelines. I have about one minute left. I want to briefly touch on the statute of limitations issue, which I think the court is probably well versed in. The point I want to make is that the government seems to think that so long as retroactive application doesn't violate the ex post facto clause, it's good, no problem. And you're not arguing otherwise. I'm not arguing otherwise. What I am saying is that we still have to start with looking at what Congress intended. And that first starts with the language that's used by Congress and the statute itself, which is the best indicator of Congress's intent. And then you can also look at the legislative history. And our position is not only did the statute use language like would and shall, which we know is future type of language, but it contains no language about retroactivity. And in fact, there was language, a prior version of the bill did include language of retroactivity that was excised in the final bill. So I think we could see that Congress intended this to apply prospectively. I see that my time is up. I can address any further arguments on rebuttal. Thank you. Thank you. Mr. Williamson. Good morning. May it please the court, Brian Williamson on behalf of the United States. The district court did not procedurally err and did not abuse its discretion with regards to the substantive reasonableness of the above guidelines sentence. The district court started with defendant's proposed guidelines range and then went above those guidelines range upon a thorough explanation of the 3553A factors. As such, the primary basis for the above guidelines sentence was the court's finding that the offense conduct was horrible, horrific, and deserving of very, very serious consequences for Mr. Kelly. I think the court has already picked up on that. The defense counsel loses the forest for the trees a little bit in arguing that the above guidelines sentence was based solely and exclusively on the obstructive conduct. Is it your view, Mr. Williamson, that the court did rely on the obstruction of justice conduct in imposing sentence? So I think it's important to clarify that the starting point was adopting defendant's guidelines range. But is it a basis to vary? I think it was a data point in justifying the above guidelines sentence. Neither were imposed specifically as a mechanical basis to vary above. Can you distinguish for me between what you mean by a data point and a basis to vary? Right, Your Honor. Did the court consider it? It's hard to tell from the court's comment that it could consider. And I'm not sure there's any specific finding by a preponderance of the evidence as to why the obstruction of justice conduct occurred or that the government did prove it by a preponderance of the evidence. Yes, Your Honor. So, you know, the sentence in court found by a preponderance of an evidence that obstructive conduct occurred. Now, whether that comprised a specific part of the above guidelines sentence or whether that was a further justification aligned with the seriousness of the offense conduct, the sentencing transcript does leave that a little bit ambiguous. But it's clear that on the offense conduct alone, the 3553A factors alone, and the seriousness of the conduct, the court could have arrived at the 240 months above guidelines sentence by itself. So just to pin this down with clarity, your position is that Judge Leinem Weber made the findings necessary to consider the obstructive conduct? Yes, Your Honor. Okay. So as to the obstructive conduct, per this court's precedent, it is not in dispute that a district court may consider acquitted conduct as long as it is proven by a preponderance of the evidence. And that's exactly what the district court did here. Moreover, it's clear what the sentencing court was referring to. He noted a keystone cop kind of operation in which these tapes spread throughout the country. And Kelly's Minions spent hundreds of thousands of dollars and effort trying to get them back. This is not just about the receipt of the tapes. This is about a broader sense of obstructive conduct. If you read the sentencing transcript in whole, it is quite clear that, as the government argued, there was a broader set of obstructive conduct that was in the court's mind when he made those comments. That included conversations that Kelly, the defendant, and his associates had with Jane's parents during the course of the investigation. The result of those comments, including Jane's family's nonparticipation in the grand jury and subsequent 2008 state trial, payments made to Jane's father during that time period, and others. The burden on the sentencing court to justify an above-guideline sentence is not high, and it was more than met here by the court's consideration of the 3553A factors. Moreover, it's also not in dispute that there was no ex post facto violation in the court's reference to the evolution of the sentencing guidelines on sex offenses. The defendant concedes as much in his papers. Your Honor, you mentioned the Coe case, and that's exactly on point here. It actually encourages reference to amendments to the guidelines without reading into the limitations that defense reads into it that those should be used by later sentencing courts in considering whether their sentences meet what Congress was intending. So at end, the sentencing court based its 240-month above-guideline sentence primarily on defendant's horrific offense conduct, not in particular on either his obstruction of justice or the evolution of the guidelines. The sentence was thus procedurally and subsequently signed. Turning to the statute of limitations question, defendant's indictment for sexual exploitation and inducement of children was timely brought. The statute of limitations period as to defendant's victims never expired, and at the time of the offense conduct, prosecutions were viable until the victims turned 25. But before Jane, Nia, or Pauline reached the age of 25, Congress in 2003 expanded the statute of limitations period to the life of the child. This was unambiguous. Section 3283 states that no statute of limitations that would otherwise preclude prosecution for an offense involving sexual exploitation of a child shall preclude such prosecution during the life of the child. This is a universal approach to changing the statute of limitations. It's forward-leaning and it's backward-leaning. There is and can be no ex post facto violation when an otherwise viable statute of limitations period, such as we have here, is expanded. Multiple courts of appeal agree on that front. And while this court has yet to have occasion to review that specific question with regards to that specific statute, 18 U.S.C. 3283, it is nonetheless agreed with the principle that no constitutional violation occurs in these circumstances. That's the United States v. Gibson case relying on Supreme Court precedent in Stodner. The application of 18 U.S.C. 3283 should thus not be considered impermissibly retroactive. It is not reviving a previously more abundant limitations period. Instead, it is explicitly precluding the application of prior limitations periods that were anything less than for the life of the child. The indictment in this case... Are you saying that the land graph analysis doesn't matter given Gibson? I wouldn't set aside... Because it seems like it's a separate issue. The Gibson is the ex post facto argument and defendant has conceded that's not what he's pursuing on appeal. Instead, he's arguing the statutory construction. That if you look at Congress's intent and look at the framework under land graph, that Congress's intent was not to make this retroactive, which is a separate issue. Your Honor, I think the language of the statute speaks unambiguously, and we don't even have to get to what the underlying intent of Congress was. It's hard to read 3283 in a manner that doesn't apply both backwards and forwards. If we do apply land graph, it satisfies both the first step and the second step. Defendant spent a lot of time in the brief focusing on the Toosie case and the statements that statute of limitations should be liberally interpreted in favor of repose in criminal cases in particular. Can you respond to that argument, please? Yes, Your Honor, absolutely. So the Toosie case and its progeny, that's a fine statement of what Toosie stands for, but there's always a carve-out for when Congress explicitly provides for otherwise, and it's the government's position that that's exactly what 18 U.S.C. 3283 does. What if we get to step two of land graph? How would Toosie impact that analysis? So in a sense, defense is asking for a kind of an exception that doesn't exist with that. Reading repose into the second step of Toosie, in defense's brief, they set out that there's a broader set of rights and obligations in that than are provided specifically in the second step of land graph. I wouldn't say we need to reach the second step of land graph because step one is satisfied given the unambiguous nature of the statute. But if we do. As to step two, if there is no retroactivity problem, we're not even in step two of land graph, and I'm not sure they've pointed to a case that says that the repose considerations in Toosie supersede the satisfaction of steps one and two of land graph. So if the court doesn't have any further questions. Thank you. Thank you. Picking up where my colleague left off, our position, of course, is that it is not okay to just jump to the ex post facto problem, and we disagree on the language of the statute and what it suggests. We have expressed language from the bill version that demonstrates a desire to include a retroactivity provision that was then removed. Now, retroactivity doesn't mean an ex post facto violation. Retroactivity could be an ex post facto violation, but it doesn't mean an ex post facto violation. And so we are in this category where we acknowledge that the government, that this was not, again, a situation where the statute of limitations has expired, but it was still retroactive, and there are still considerations that this court considered, and that the United States Supreme Court has said the starting place in land graph, the court says the default position is prospectivity. So we shouldn't start with a retroactivity unless otherwise. Toosie says criminal statute should be interpreted in favor of repose. So those general principles, those canons, need to be the starting point. And I think lower courts, to some degree, have gone wayward from that. I think the U.S. Supreme Court might get us back on track with that. But if the language is clear at step one, that doesn't come into play. I understand you don't think it's clear. Well, I think it's clear in the other direction. But if it is not clear in the direction you want it to be, then we don't get into the Toosie land. Well, our position is that the legislative history, we also agree that you don't need to get to step two. So we're in agreement on that. And obviously we would acknowledge that some of these circuits have already sided with the government's position on this. The issue is in front of the Second Circuit presently. I don't think any circuit has sided with your position. You're right. That's correct. But perhaps there will be a split at some point. But our position is that the U.S. Supreme Court would see this differently in light of those general principles and that we need to start there. And I think the court is well equipped with the information that we've provided and the government's provided to make that decision. I want to get back to this obstructive conduct very quickly. I'm still unclear. I think the government is unclear. Everyone is unclear on how the court reached the above guidelines sentence. And I don't think it's sufficient to just say, well, he spent a lot of time talking or speaking about the 3553 factors, and therefore it's all justified. I think that's dangerous, and I think the court needed to be a little more precise with its factual basis. Notably, the government is focusing this court more on a different set of obstructive conduct, for which Mr. Kelly was also acquitted, that the district court didn't even mention. The government talks about the intimidating behavior, the hush money towards Jane Doe and her family. In our reply brief, we honed in and demonstrated for the court, that is not what the evidence showed. Jane Doe said nothing of the sort. She said there was no hush money. The mother unequivocally said there was no hush money to testify falsely in front of the grand jury. Nothing of the sort happened. They had their own reasons for wanting to not cooperate with the investigation, and it wasn't as a result of Mr. Kelly's conduct. Now, the government, interestingly, is focusing that court in that direction, but the district court didn't mention it at all. So the district court didn't rely. At no point did the district court say, I'm going to give him an above guidelines range, because he engaged in obstructive conduct as it relates to his interactions with Jane Doe 1 or her family. He was more focused on, really, what was the receipt counts about this wild goose chase. And I want to end on the point that the evidence showed that those tapes that were the subject of the wild goose chase, which were pled and charged in the indictment, did not contain child pornography. It contained old-fashioned pornography, if you will. It did not contain child pornography, and the government didn't prove it, which is why the jury came back as it did. And there is really no avenue for the court to find, under this lower standard, that it did. If it did, then it's unclear why the jury would ever have acquitted any of them on the conspiracy count. So our position is the district court judge got that wrong factually, if he relied on it at all, and that the sentencing justification was too nebulous, and that we needed a more precise basis, because how else can Mr. Kelly defend that if he doesn't have a specific articulated basis? With that, I thank your honors. Thank you. Our thanks to all counsel. The case is taken under advisement.